## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

**Civil Action No.**

|  |  |
|---|---|
| PANTECH CORPORATION, | |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| BLU PRODUCTS INC., | |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Pantech Corporation ("Plaintiff" or "Pantech"), for its Complaint against Defendant Blu Products, Inc. ("Blu" or "Defendant"), alleges the following:

## NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*

## THE PARTIES

2.      Pantech Corporation is an entity organized under the laws of South Korea, with a place of business at 8, Yangjaecheon-ro 21gil, Suite 402, Seoul, 06748, Republic of Korea.

3.      Defendant Blu Products, Inc. is a Florida for-profit corporation, with a principal place of business located at 10814 NW 33rd Street, Suite 100, Doral, FL 33172.

4.      Defendant maintains a registered agent for service of process in Florida: Bernard L. Egozi, at 2999 NE 191st Street, Number 407, Aventura, Florida 33180.

1

739706925

5.     Defendant is in the business of providing information and communications technology solutions. Specifically, Defendant provides and makes available for sale wireless telecommunications equipment, including smartphones, tablets and mobile phones.

## NATURE OF THE ACTION, JURISDICTION AND VENUE

6.     Pantech brings this action for patent infringement under the patent laws of the United States, 35 U.S.C. § 271, *et seq.*

7.     This Court has subject matter jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the patent laws of the United States.

8.     This Court has personal jurisdiction over Defendant. Defendant has sufficient minimum contacts within the State of Florida and this district, pursuant to due process, because: (a) Pantech's claims arise in whole or in part from Defendant's conduct in Florida; (b) Blu Products, Inc., has a principal place of business in Florida; (c) Defendant is incorporated in the state of Florida and has purposely availed itself of the privileges of conducting business in the State of Florida by regularly conducting and soliciting businesses within the State of Florida and within this district; (d) Defendant maintains a registered agent for service of process in Florida: Bernard L. Egozi, at 2999 NE 191st Street, Number 407, Aventura, Florida 33180; and (e) on information and belief, Defendant sells and offers to sell products and services through the United States, including in this district, and introduces products and services that enter into the stream of commerce and that incorporate infringing technology knowing that they would be sold in this judicial district and elsewhere in the United States.

739706925

9.      Venue is proper in this judicial district under 28 U.S.C. § 1400(b) as Defendant is incorporated in the State of Florida and has a regular and established place of business in this district at 10814 NW 33rd Street, Suite 100, Doral, Florida, 33172.

## ACCUSED INSTRUMENTALITIES

10.     Defendant makes, uses, sells and offers for sale, provides, and causes to be used, now and within the past six years, the S Series, G Series and Vivo Series devices, and certain other LTE-capable devices (the "Accused Instrumentalities").

11.     For example, Defendant advertises that the S Series, G Series, C Series, Win Series, R Series, Life One Series and Vivo Series products, such as S1, G5, G5-Plus, G50, G50-Plus, G50-Mega, G6, G60, G8, G70, G80, G9, G9-Pro, G90, G90-Pro, C6L 2020, C6 2020, C5L 2020, C6L, Win HD LTE, Win JR LTE, Studio 6 LTE, R2 LTE, R1 HD, Life One (2015), Life One XL, Life One X2, Life One X2 Mini, Vivo XI, Vivo XI+, Vivo X5, Vivo XL5, Vivo 8L, Vivo 8, Pure XR and Vivo XL2, are compliant with LTE cellular network standards.

## PATENTS-IN-SUIT

12.     U.S. Patent No. 8,538,411 (the "'411 Patent"), "Apparatus and Method for Transmitting/Receiving Activation Indicator Regarding Component Carrier in Wireless Communication System," was assigned to Pantech through mergers. On May 7, 2020, Pantech obtained full and complete ownership, title and interest in the '411 Patent.[1]

---

[1] The named inventors of the '411 Patent are Ki Bum Kwon, Myung Cheul Jung and Sung Jin Seo. The application was filed October 29, 2010, published on May 5, 2011, and the '411 Patent issued on September 17, 2013. On October 29, 2010, the named inventors assigned their interest to Pantech Co., Ltd. On July 6, 2016, Pantech Co., Ltd. transferred the patent to Pantech Inc. On October 31, 2016, Pantech Inc. transferred the patent to Goldpeak Innovations Inc. ("Goldpeak"). On May 7, 2020, Goldpeak transferred to Pantech Corporation.

13.     U.S. Patent No. 8,787,216 (the "'216 Patent"), "Apparatus and Method for Allocating Channel State Information-Reference Signal In Wireless Communication Systems," was assigned to Pantech through mergers. On May 7, 2020, Pantech obtained full and complete ownership, title and interest in the '216 Patent.[2]

14.     U.S. Patent No. 8,873,519 (the "'519 Patent"), "User Equipment, PDSCH A/N Transmitting Method Thereof, Transmission/Reception Point, and PDSCH A/N Receiving Method Thereof," was assigned to Pantech through mergers. On May 7, 2020, Pantech obtained full and complete ownership, title and interest in the '519 Patent.[3]

15.     U.S. Patent No. 9,237,566 (the "'566 Patent"), "Method of Transmitting and Receiving Ack/Nack Signal and Apparatus Thereof," was assigned to Pantech through mergers. On May 7, 2020, Pantech obtained full and complete ownership, title and interest in the '566 Patent.[4]

---

[2] The named inventor of the '216 Patent are Sungjun Yoon, Kyoung-min Park and Kitae Kim. The application was filed May 31, 2011, published December 1, 2011, and the '216 Patent issued on July 22, 2014. On May 31, 2011, the inventors assigned their interest to Pantech Co., Ltd. On July 6, 2016, Pantech Co., Ltd. transferred the patent to Pantech Inc.  On October 31, 2016, Pantech Inc. transferred the patent to Goldpeak. On May 7, 2020, Goldpeak transferred to Pantech Corporation.

[3] The named inventors of the '519 Patent are Dong Hyun Park and Sung Jun Yoon. The patent application was filed on December 14, 2012, published June 20, 2013, and the '519 Patent issued on October 28, 2014. On December 14, 2012, the named inventors assigned their interest to Pantech Co., Ltd. On July 6, 2016, Pantech Co., Ltd. transferred its interest to Pantech Inc. On October 31, 2016, Pantech Inc. transferred its interest to Goldpeak, and on May 7, 2020, Goldpeak transferred the '519 Patent to Pantech Corporation.

[4] The named inventor of the '566 Patent is Dong Hyun Park. The U.S. patent application was filed on April 4, 2013, published August 1, 2013, and the '566 Patent issued on January 12, 2016. On January 4, 2013, the named inventor assigned interest to Pantech Co., Ltd. On July 6, 2016, Pantech Co. Ltd. transferred the '566 Patent to Pantech Inc. On October 31, 2016, Pantech Inc. transferred to Goldpeak Innovations Inc., and on May 7, 2020, Goldpeak transferred the '566 Patent to Pantech Corporation.

739706925

16.     U.S. Patent No. 9,854,545 (the "'545 Patent"), "Apparatus and Method for Establishing Uplink Synchronization in a Wireless Communication System," was assigned to Pantech through mergers. On May 7, 2020, Pantech obtained full and complete ownership, title and interest in the '545 Patent.[5]

17.     U.S. Patent No. 6,809,641, (the "'641 Patent"), "Method for Disabling Alarm Temporarily in Mobile Communication Terminal," was assigned to Pantech through mergers. On May 7, 2020, Pantech obtained full and complete ownership, title and interest in the '641 Patent.[6]

18.     Pantech is the rightful owner of the Asserted Patents and holds the entire right, title and interest in the Asserted Patents, including the right to collect for past damages.

## BACKGROUND

19.     Pantech Co., Ltd., the predecessor in interest to what is now Pantech Corporation[7], was originally founded in 1991 in Seoul, South Korea as a competitor in the wireless phone marketplace.

---

[5] The named inventors of the '545 Patent are Kibum Kwon and Myungcheul Jung. The patent application was filed on June 8, 2015, published on September 24, 2015, and the '545 Patent issued on December 26, 2017. The inventors assigned the parent application, U.S. Patent App. No., 13/578,531 and any continuations thereto, including the application underlying the '545 Patent, to Pantech Co. Ltd. on August 10, 2012. On July 6, 2016, Pantech Co., Ltd. transferred the '545 Patent to Pantech Inc. On October 31, 2016, Pantech Inc. transferred to Goldpeak Innovations Inc., and on May 7, 2020, Goldpeak transferred the '566 Patent to Pantech Corporation.

[6] The named inventors of the '641 Patent are Cham-A Choi and Hee-Jung Lee. The patent application was filed on July 11, 2002, published on February 6, 2003, and the '641 Patent issued on October 26, 2004. On September 30, 2002, the inventors assigned their interests to SK Teletech Co., Ltd. On August 26, 2005, SK Teletech Co., Ltd. changed its name to Sky Teletech Co., Ltd.  On December 2, 2005, Sky Teletech Co., Ltd. merged with and assigned its interest to Pantech Co., Ltd.  On October 22, 2015, Pantech Co., Ltd. transferred the '641 Patent to Pantech Inc. On October 31, 2016, Pantech Inc. transferred the patent to Goldpeak Innovations Inc., and on May 7, 2020, Goldpeak transferred the '641 Patent to Pantech Corporation.

[7] Pantech Co., Ltd. was formed in 1991, and as the result of a restructuring and acquisition in 2015 became Pantech, Inc. Thereafter, Pantech Corporation was formed. Pantech, Inc. transferred its

739706925

20.     Throughout the 1990s and 2000s, Pantech rose to become a leading manufacturer of mobile phones. By 2012, Pantech had become the second best-selling Korean handset maker.

21.     Pantech's products are sold in South Korea, the United States, Japan, China, Europe, Vietnam, and other countries around the world. Pantech launched operations in the United States in 2003.

22.     Pantech's portfolio of intellectual property is broad and extensive, comprising thousands of worldwide patents and patent applications in the areas of telecommunications, "smart" devices, and Internet of Things products. Pantech's portfolio, in one aspect, covers wireless communication systems and devices and methods for using those communication systems. In the wireless technology space alone, Pantech holds more than 200 U.S. patents and applications, many of which have been declared standard essential patents.

23.     Pantech has invested heavily in research and development, investing, on average, over 10% of its annual revenue in research and development. Pantech's research and development efforts in network technology include, but are not limited to, technologies focused on LTE & 5G networks, WCDMA/CDMA, WiMAX, WiFi, Near Field Communication (NFC), Visible Light Communication, Human Body Communication, Ultra-Wideband Communication and IP Mesh Network.

24.     Over the last decade, Pantech has enthusiastically contributed to the 3rd Generation Partnership Project (3GPP) LTE/LTE-A standardization by submitting proposals to TSG RAN, RAN1, and RAN2. Indeed, Pantech secured numerous LTE Standard Essential Patents and patent applications (SEPs) in connection with its contributions.  In 2014, National Applied Research Labs

---

assets to Pantech Corporation as part of an asset sale in 2020 (these three entities are hereinafter referred to collectively as "Pantech").

739706925

in Taiwan reported that Pantech held 1% of LTE-related SEPs, and that number has only increased since 2014.

25.     Recognizing the value of its own portfolio and its potential role in the Fourth Industrial Revolution, Pantech has committed to making its intellectual property available in the marketplace, including to competitors. On its website, under the heading "IP Umbrella Services," Pantech offers to exchange intellectual property and technology, and collaborate with competitors and patent holders, through licenses, to enable the market to identify new technological ventures.

26.     Pantech is the owner by assignment of a portfolio of patents, including the six patents described in Paragraphs 12-17 and in detail in the counts below (collectively, the "Asserted Patents"), that relate to mobile device user interface features and technology for cellular communications networks, including variations or generations of cellular communication network technology such as, but not limited to LTE, as discussed herein.

27.     Cellular communication network technology is used to provide data transmission across mobile cellular networks.

28.     It is critical for cellular communication network technology to be standardized around the globe. Independent standard-setting organizations, like the European Telecommunications Standards Institute (ETSI), establish global standards for the telecommunication industries. ETSI, along with other standard-setting organizations, have made it possible to have global interoperability between networks, devices and network operators.

29.     ETSI sets forth a policy in order to balance intellectual property protections against the need for an open standard by designating certain intellectual property rights (IPR) as "essential." ETSI sets forth the following definition of "essential":

> "ESSENTIAL" as applied to IPR means that it is not possible on technical (but not commercial) grounds, taking into account normal technical practice and the state of

7

the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair, use or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that IPR. For the avoidance of doubt in exceptional cases where a STANDARD can only be implemented by technical solutions, all of which are infringements of IPRs, all such IPRs shall be considered ESSENTIAL.

Clause 15.6 of the ETSI IPR Policy, https://www.etsi.org/images/files/IPR/etsi-ipr-policy.pdf.

30.     Blu is required to have a license to one or more essential patents owned by Pantech, including the Asserted Patents that are identified as essential.

31.     Pantech, through its predecessor-in-interest, Goldpeak, first sent a letter to Mr. Samuel Ohev-Zion, CEO of Defendant, on March 6, 2018 offering to license patents currently owned and/or managed by Pantech, including those that are essential to cellular standards including LTE and LTE-Advanced. The correspondence identified Blu products, such as Vivo 8L, S1, Vivo 8, Pure XR, Vivo XL2, R2LTE, R1 HD, Life One X2 and Life One X2 Mini, that were covered by claims of the offered patents and attached a list of Pantech's patents, including those covering Blu's products.

32.     Since then, Pantech, directly or through its predecessors-in-interest, engaged in additional communication with Blu through emails, letters, and telephonic meetings regarding licensing patents owned and/or managed by Pantech, including those that are essential to cellular standards including LTE. From July 2020 until the filing of this Complaint, Pantech has continuously attempted to license its patents, including the patents asserted herein, on fair and reasonable terms. This includes Pantech providing detailed proposals to Blu on September 25, 2020 and on December 15, 2020.

33.     In accordance with ETSI's policy, Pantech provided Blu with multiple license offers on terms that are fair, reasonable and non-discriminatory ("FRAND"). The United States Department of Justice, with the United States Patent and Trademark Office (USPTO) and the

National Institute of Standards and Technology (NIST), have made clear that patent owners and potential licensees of essential patents should "engage in good-faith negotiations to reach F/RAND license terms" to "help reduce the costs and other burdens associated with litigation." 2019 Policy Statement on Remedies for SEPs Subject to Voluntary F/RAND Commitments, https://www.justice.gov/atr/page/file/1228016/download (December 19, 2019).

34.     Pantech has engaged in continuous and good faith efforts over the last year, which include but are not limited to providing technical details regarding the Asserted Patents and their "standards essential" nature and offering to license the Asserted Patents and other offered patents on FRAND terms. However, Defendant has not engaged in good faith discussions or negotiations with Pantech. Defendant refused Pantech's offers to license any of the offered patents, including the Asserted Patents.

35.     Defendant has been operating and continues to operate without a license to Pantech's standards-essential and other patents. The parties' licensing negotiations to-date have been unsuccessful because Defendant refuses to accept Pantech's fair, reasonable and non-discriminatory licensing terms.  Given Defendant's unwillingness to license Pantech's standards-essential patents, or to cease infringement, Pantech has filed this lawsuit to protect its patent rights in the United States.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 8,538,411

36.     The allegations set forth in the foregoing paragraphs 1 through 35 are incorporated into this claim for relief.

37.     On September 17, 2013, U.S. Patent No. 8,538,411, "Apparatus and Method for Transmitting/Receiving Activation Indicator Regarding Component Carrier in Wireless Communication System," was duly and legally issued by the United States Patent and Trademark

739706925

Office from U.S. Patent Application No. 12/916,203, filed on October 29, 2010. The '411 Patent claims foreign priority to KR 10-2010-0088151, filed on September 8, 2010 and KR 10-2009-0104586, filed on October 30, 2009. A true and correct copy of the '411 Patent is attached as Exhibit 1.

38.     Pantech is the assignee and owner of all right, title and interest in and to the '411 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

39.     The '411 Patent discloses a method for controlling activation/deactivation of component carriers and/or serving cells by a user equipment (UE) in a wireless communication system. For example, the UE is configured to detect and process control elements in messages received from a communication network, which indicate the presence of additional activation/deactivation information for corresponding component carriers and/or serving cells. Compliance with 3GPP TS 36.300, TS 36.331, and TS 36.321 Release 10 and higher, as required by at least the LTE Advanced cellular standard, requires supporting activation/deactivation of component carriers and/or serving cells by a user equipment (UE) in a wireless communication system, and practicing at least claims 1-14 of the '411 Patent. Compliance with these technical specifications, and thus with at least the LTE Advanced cellular standard, requires the use of the inventions recited in at least claims 1-14 of the '411 Patent, including the functionality described in this paragraph.

40.     Defendant was made aware of the '411 Patent and its infringement thereof by correspondence from Pantech's predecessor-in-interest, Goldpeak, on March 6, 2018 as discussed in Paragraphs 31-32 above.

41.     Defendant was further made aware of the '411 Patent and its infringement thereof at least as early as the date of filing of this Complaint.

42.     Upon information and belief, Defendant has and continues to directly infringe at least claims 1-14 of the '411 Patent by making, using, selling, importing, offering to sell within the United States, importing into the United States, and providing to and within the United States, Accused Instrumentalities that practice at least claims 1-14 of the '411 Patent (the "Blu Accused '411 Instrumentalities"). Defendant also has and continues to directly infringe at least claims 1-14 by practicing claims 1-14 through the Blu Accused '411 Instrumentalities, and by causing the Blu Accused '411 Instrumentalities to practice the patented inventions.

43.     Blu Accused '411 Instrumentalities include G series phones (*e.g.*, G5, G5-Plus, G50, G50-Plus, G50-Mega, G6, G60, G8, G70, G80, G9, G9-Pro, G90, G90-Pro), VIVO series phones (*e.g.*, VIVO X5, VIVO XL5, VIVO XI, VIVO XI+) and other LTE-compatible products that support LTE carrier integration. On information and belief, each of the Blu Accused '411 Instrumentalities incorporates at least one processor configured to comply with one or more of LTE Advanced, LTE Release 10 or later cellular communication protocols. Each of the Blu Accused '411 Instrumentalities incorporates at least one processor configured to operate as a LTE Category 6 (cat6, cat-6) or higher category level. Each of the Blu Accused '411 Instrumentalities incorporates at least one processor configured to support LTE carrier aggregation, and thus complies with at least the following 3GPP technical specifications: TS 36.300, TS 36.331, and TS 36.321, Release 10 and higher.

44.     Exemplary Blu Accused '411 Instrumentalities incorporate each a MediaTek Helio chipset, application processor, SoC, or system-on-chip (*e.g.*, MediaTek Helio P22, P23, P29, A25, G90T, P60). Information and documents from MediaTek's website indicate that each of the

incorporated MediaTek Helio chipsets supports LTE carrier aggregation. On information and belief, each incorporated MediaTek Helio chipset, application processor, SoC, or system-on-chip complies with one or more of LTE Advanced, LTE Release 10 or later cellular communication protocols, including at least the following 3GPP technical specifications: TS 36.300, TS 36.331, and TS 36.321.

45.   On information and belief, exemplary Blu Accused '411 Instrumentalities incorporate each a UNISOC chipset, application processor, SoC, or system-on-chip (*e.g.*, UNISOC SC9863A).  On information and belief, each of the incorporated Unisoc chipsets operates as a LTE Category 6 (cat6, cat-6) or higher category level, and/or supports LTE carrier aggregation. On information and belief, each incorporated UNISOC chipset, application processor, SoC, or system-on-chip complies with one or more of LTE Advanced, LTE Release 10 or later cellular communication protocols including at least the following 3GPP technical specifications: TS 36.300, TS 36.331, and TS 36.321.

46.   Since March 6, 2018, when it was first made aware of the '411 Patent, Defendant's infringement has been, and continues to be, willful.

47.   Upon information and belief, these Blu Accused '411 Instrumentalities are used, marketed, provided to, and/or used by or for Defendant's partners, clients, customers/subscribers and end users across the country and in this district.

48.   Upon information and belief, Defendant has induced and continues to induce others to infringe at least claims 1-14 of the '411 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendant's partners, clients, customers/subscribers, and end users,

whose use of the Blu Accused '411 Instrumentalities constitutes direct infringement of at least one claim of the '411 Patent.

49.   In particular, Defendant's actions that aid and abet others such as its partners, customers/subscribers, clients, and end users to infringe include advertising and distributing the Blu Accused '411 Instrumentalities and providing instruction materials, training, and services regarding the Blu Accused '411 Instrumentalities.

50.   Any party, including Defendant's partners, clients, customers/subscribers, and end users, using the Blu Accused '411 Instrumentalities necessarily infringes the '411 Patent because the inventions of the '411 Patent are required to comply with the relevant cellular standard. Defendant advertises its Blu Accused '411 Instrumentalities as compliant with the relevant cellular standard, which induces others to infringe the '411 Patent. Defendant has knowingly induced infringement since at least March 6, 2018, when Defendant was first made aware of the '411 Patent during extensive correspondence with Plaintiff as discussed in Paragraphs 31-32 above.

51.   Upon information and belief, Defendant is liable as a contributory infringer of the '411 Patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States the Blu Accused '411 Instrumentalities that infringe the patented inventions, to be especially made or adapted for use in an infringement of the '411 Patent. Each of the Blu Accused '411 Instrumentalities is a material component for use in practicing the '411 Patent and is specifically made and not a staple article of commerce suitable for substantial non-infringing use.  In particular, each of these Accused Instrumentalities is advertised to be compliant with the relevant standard and primarily used in compliance with that standard.

52.   Pantech has been harmed by Defendant's infringing activities.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 8,787,216

53.     The allegations set forth in the foregoing paragraphs 1 through 35 are incorporated into this claim for relief.

54.     On July 22, 2014 the '216 Patent, entitled "Apparatus and Method for Allocating Channel State Information-Reference Signal In Wireless Communication Systems" was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application No. 13/149,225, filed on May 31, 2011. The '216 Patent claims foreign priority to KR 10-2010-0055073, filed on June 10, 2010, and KR 10-2010-0052033, filed on June 1, 2010. A true and correct copy of the '216 Patent is attached as Exhibit 2.

55.     Pantech is the assignee and owner of all right, title and interest in and to the '216 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

56.     The '216 Patent discloses at least an apparatus to receive Channel State Information-Reference Signals (CSI-RSs). For example, compliance with 3GPP TS 36.211 and TS 36.213, as required by LTE, requires the use of CSI reference signals in an apparatus that practices at least claim 7 of the '216 Patent, which specifies an advantageous manner of allocating corresponding CSI-RS patterns to resource areas by each antenna port in each eNB (or eNodeB) or cell. Compliance with at least the above technical specifications, and thus with at least the LTE cellular standard, requires the use of the inventions recited in at least claim 7 of the '216 Patent, including the functionality described in this paragraph.

57.     Upon information and belief, Defendant has and continues to directly infringe at least claim 7 of the '216 Patent by making, using, selling, importing, offering to sell within the United States, importing into the United States, and providing to and within the United States,

739706925

Accused Instrumentalities that practice at least claim 7 of the '216 Patent (the "Blu Accused '216 Instrumentalities"). Defendant also has and continues to directly infringe at least claim 7 by practicing claim 7 through the Blu Accused '216 Instrumentalities, and by causing the Blu Accused '216 Instrumentalities to practice the patented inventions.

58.     Blu Accused '216 Instrumentalities include G Series phones (*e.g.*, G5, G5-Plus, G50, G50-Plus, G50-Mega, G6, G8, G60, G70, G80, G9, G9-Pro, G90, G90-Pro), VIVO Series phones (*e.g.*, VIVO X5, VIVO XL5, VIVO XI, VIVO XI+) and other LTE-compatible devices that support the use of CSI reference signals in compliance with 3GPP TS 36.211 and TS 36.213.

59.     Defendant was made aware of the '216 Patent and its infringement thereof by correspondence from Pantech's predecessor-in-interest, Goldpeak, on March 6, 2018 as discussed in Paragraphs 31-32 above.

60.     Defendant was further made aware of the '216 Patent and its infringement thereof at least as early as the date of filing of this Complaint.

61.     Since March 6, 2018, when it was first made aware of the '216 Patent, Defendant's infringement has been, and continues to be, willful.

62.     Upon information and belief, these Blu Accused '216 Instrumentalities are used, marketed, provided to, and/or used by or for Defendant's partners, clients, customers/subscribers and end users across the country and in this district.

63.     Upon information and belief, Defendant has induced and continues to induce others to infringe at least claim 7 of the '216 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendant's partners, clients, customers/subscribers, and end users,

whose use of the Blu Accused '216 Instrumentalities constitutes direct infringement of at least one claim of the '216 Patent.

64.     In particular, Defendant's actions that aid and abet others such as its partners, customers/subscribers, clients, and end users to infringe include advertising and distributing the Blu Accused '216 Instrumentalities and providing instruction materials, training, and services regarding the Blu Accused '216 Instrumentalities.

65.     Any party, including Defendant's partners, clients, customers/subscribers, and end users, using the Blu Accused '216 Instrumentalities necessarily infringes the '216 Patent because the inventions of the '216 Patent are required to comply with the LTE cellular standard (3GPP TS 36.211 and 36.213). Defendant advertises its Blu Accused '216 Instrumentalities as compliant with LTE, which induces others to infringe the '216 Patent. Defendant has knowingly induced infringement since at least March 6, 2018, when Defendant was first made aware of the '216 Patent during extensive correspondence with Plaintiff as discussed in Paragraphs 31-32 above.

66.     Upon information and belief, Defendant is liable as a contributory infringer of the '216 Patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States the Blu Accused '216 Instrumentalities that infringe the patented inventions, to be especially made or adapted for use in an infringement of the '216 Patent. Each of the Blu Accused '216 Instrumentalities is a material component for use in practicing the '216 Patent and is specifically made and not a staple article of commerce suitable for substantial non-infringing use. In particular, each of these Accused Instrumentalities is advertised to be compliant with the relevant standard and primarily used in compliance with that standard.

67.     Pantech has been harmed by Defendant's infringing activities.

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 8,873,519

68.     The allegations set forth in the foregoing paragraphs 1 through 35 are incorporated into this claim for relief.

69.     On October 28, 2014, the '519 Patent, entitled "User Equipment, PDSCH A/N Transmitting Method Thereof, Transmission/Reception Point, and PDSCH A/N Receiving Method Thereof" was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application No. 13/715,278, filed on December 14, 2012. The '519 Patent claims foreign priority to KR 10-2012-0009275, filed on January 30, 2012, and KR 10-2011-0136662, filed on December 16, 2011. A true and correct copy of the '519 Patent is attached as Exhibit 3.

70.     Pantech is the assignee and owner of all right, title and interest in and to the '519 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

71.     The '519 Patent discloses systems and methods, including carrier aggregation systems and methods, in which a user equipment ("UE") performs Time Division Duplex ("TDD") communication and is configured with at least two serving cells (a primary cell and a secondary cell) having different TDD Uplink-Downlink ("UL-DL") configurations. For instance, upon detecting a physical downlink shared channel (PDSCH) transmission on the secondary cell, the UE transmits an acknowledgement/negative acknowledgement (A/N) in an uplink subframe determined by the secondary cell's "reference" UL/DL configuration, which indicates downlink association set indexes for the subframe. For example, Claims 1 and 2 of the '519 patent each recite elements of the TDD method and carrier aggregation functionality that, upon information and belief, are mandated by at least the LTE Advanced standard, including at least the following 3GPP technical specifications: TS 36.213 and TS 36.211, Release 10 and higher. Compliance with

739706925

these technical specifications, and thus with at least the LTE Advanced standard, requires the use of the inventions recited in at least claims 1 and 2 of the '519 Patent, including the functionality described in this paragraph.

72.     Upon information and belief, Defendant has and continues to directly infringe at least claims 1 and 2 of the '519 Patent by making, using, selling, importing, offering to sell within the United States, importing into the United States, and providing to and within the United States, Accused Instrumentalities that practice at least claims 1 and 2 of the '519 Patent (the "Blu Accused '519 Instrumentalities"). Defendant also has and continues to directly infringe at least claims 1 and 2 by practicing claims 1 and 2 through the Blu Accused '519 Instrumentalities and by causing the Blu Accused '519 Instrumentalities to practice the patented inventions.

73.     Blu Accused '519 Instrumentalities include the S1, G9, G9-Pro, G90, G90-Pro, and any other LTE-capable Blu device that supports LTE TDD communication and carrier aggregation. On information and belief, each of the Accused '519 Instrumentalities incorporates at least one processor configured to comply with LTE Advanced, including supporting LTE carrier aggregation and TDD, and thus support at least 3GPP TS 36.213 and TS 36.211, Release 10 and higher.

74.     Upon information and belief, the Blu Accused '519 Instrumentalities all incorporate at least one chipset, application processor, SoC, or system-on-chip, manufactured by MediaTek, including the Helio P22, Helio P60, Helio A25, Helio G90T, and/or MT6750 chipsets. Upon information and belief, each of those chipsets, application processors, SoCs, or systems-on-chip supports LTE TDD and carrier aggregation functionality, and is configured to comply with LTE Advanced, including at least the following 3GPP technical specifications: TS 36.213 and TS 36.211, Release 10 and higher.

75.     Defendant was made aware of the '519 Patent and its infringement thereof by correspondence from Pantech's predecessor-in-interest, Goldpeak, on March 6, 2018 as discussed in Paragraphs 31-32 above.

76.     Defendant was further made aware of the '519 Patent and its infringement thereof at least as early as the date of filing of this Complaint.

77.     Since March 6, 2018, when it was first made aware of the '519 Patent, Defendant's infringement has been, and continues to be, willful.

78.     Upon information and belief, the Blu Accused '519 Instrumentalities are used, marketed, provided to, and/or used by or for Defendant's partners, clients, customers/subscribers and end users across the country and in this district.

79.     Upon information and belief, Defendant has induced and continues to induce others to infringe at least claims 1-2 of the '519 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendant's partners, clients, customers/subscribers, and end users, whose use of the Blu Accused '519 Instrumentalities constitutes direct infringement of at least one claim of the '519 Patent.

80.     In particular, Defendant's actions that aid and abet others such as its partners, customers/subscribers, clients, and end users to infringe include advertising and distributing the Blu Accused '519 Instrumentalities and providing instruction materials, training, and services regarding the Blu Accused '519 Instrumentalities.

81.     Any party, including Defendant's partners, clients, customers/subscribers, and end users, using the Accused Instrumentalities necessarily infringes the '519 Patent because the inventions of the '519 Patent are required to comply with the relevant cellular standard. Defendant

advertises its Blu Accused '519 Instrumentalities as compliant with the relevant cellular standard, which induces others to infringe the '519 Patent. Defendant has knowingly induced infringement since at least March 6, 2018, when Defendant was first made aware of the '519 Patent during extensive correspondence with Plaintiff as discussed in Paragraphs 31-32 above.

82.     Upon information and belief, Defendant is liable as a contributory infringer of the '519 Patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States the Accused Instrumentalities that infringe the patented inventions, to be especially made or adapted for use in an infringement of the '519 Patent. Each of the Blu Accused '519 Instrumentalities is a material component for use in practicing the '519 Patent and is specifically made and not a staple article of commerce suitable for substantial non-infringing use. In particular, each of the Blu Accused '519 Instrumentalities is advertised to be compliant with the relevant standard and primarily used in compliance with that standard.

83.     Pantech has been harmed by Defendant's infringing activities.

## COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 9,237,566

84.     The allegations set forth in the foregoing paragraphs 1 through 35 are incorporated into this claim for relief.

85.     On January 12, 2016, the '566 Patent, entitled "Method of Transmitting and Receiving Ack/Nack Signal and Apparatus Thereof" was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application No. 13/877,827, filed on April 4, 2013. This application is a National Stage Entry of PCT/KR2011/007659, filed on October 14, 2011 and published on April 29, 2012 as WO2012/050389. The '566 Patent claims foreign priority to KR 10-2010-0100988, filed on October 15, 2010. A true and correct copy of the '566 Patent is attached as Exhibit 4.

739706925

86.     Pantech is the assignee and owner of all right, title and interest in and to the '566 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for its infringement.

87.     The '566 Patent discloses methods and apparatuses for transmitting an acknowledgement/not-acknowledgement (ACK/NACK) for a Hybrid Automatic Repeat reQuest (HARQ) by a user equipment in a carrier aggregation system. Based on channel selection, an ACK/NACK is mapped in response to the downlink data transmission onto a combination of one of two ACK/NACK resources and a modulation symbol, and the ACK/NACK is transmitted to the base station by using the combination. For example, claims 1 and 5 of the '566 Patent each recite elements of the HARQ and carrier aggregation functionality mandated by at least the LTE Advanced standard, including at least the following 3GPP technical specifications: TS 36.213, TS 36.331, and TS 36.211, Release 10 and higher. Compliance with these technical specifications, and thus with at least the LTE Advanced standard, requires the use of the inventions recited in at least claims 1 and 5 of the '566 Patent, including the functionality described in this paragraph.

88.     Defendant was made aware of the '566 Patent and its infringement thereof by correspondence from Pantech's predecessor-in-interest, Goldpeak, on March 6, 2018 as discussed in Paragraph 31-32 above.

89.     Defendant was further made aware of the '566 Patent and its infringement thereof at least as early as the date of filing of this Complaint.

90.     Upon information and belief, Defendant has and continues to directly infringe at least claims 1 and 5 of the '566 Patent by making, using, selling, importing, offering to sell within the United States, importing into the United States, and providing to and within the United States, Accused Instrumentalities that practice at least claims 1 and 5 of the '566 Patent (the "Blu

21

Accused '566 Instrumentalities"). Defendant also has and continues to directly infringe at least claims 1 and 5 by practicing claims 1 and 5 through the Blu Accused '566 Instrumentalities, and by causing the Blu Accused '566 Instrumentalities to practice the patented inventions.

91.     The Blu Accused '566 Instrumentalities include, without limitation, the G series phones (*e.g.*, G5, G5-Plus, G50, G50-Plus, G50-Mega, G6, G8, G60, G70, G80, G9, G9-Pro, G90, G90-Pro), VIVO series phones (*e.g.*, VIVO X5, VIVO XL5, VIVO XI, VIVO XI+) and other LTE-compatible devices that support LTE carrier aggregation, and thus support at least 3GPP TS 36.213, TS 36.331, and TS 36.211, Release 10 and higher. On information and belief, each of the Blu Accused '566 Instrumentalities incorporates at least one processor configured to comply with LTE Advanced, including LTE carrier aggregation.

92.     On information and belief, the Blu Accused '566 Instrumentalities each incorporate a MediaTek Helio chipset, application processor, SoC, or system-on-chip (*e.g.*, MediaTek Helio P22, P23, P29, A25, G90T, P60).  Information and documents from MediaTek's website indicate that each of the incorporated MediaTek Helio chipsets supports LTE carrier aggregation.  Each incorporated MediaTek Helio chipset, application processor, SoC, or system-on-chip complies with LTE Advanced, including at least 3GPP TS 36.213, TS 36.331, and TS 36.211, Release 10 and higher.

93.     Since March 6, 2018, when it was first made aware of the '566 Patent, Defendant's infringement has been, and continues to be, willful.

94.     Upon information and belief, these Blu Accused '566 Instrumentalities are used, marketed, provided to, and/or used by or for the Defendant's partners, clients, customers/subscribers and end users across the country and in this District.

95.     Upon information and belief, Defendant has induced and continues to induce others to infringe at least claims 1 and 5 of the '566 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendant's partners, clients, customers/subscribers, and end users, whose use of the Blu Accused '566 Instrumentalities constitutes direct infringement of at least one claim of the '566 Patent.

96.     In particular, the Defendant's actions that aid and abet others such as its partners, customers/subscribers, clients, and end users to infringe include advertising and distributing the Blu Accused '566 Instrumentalities and providing instruction materials, training, and services regarding the Blu Accused '566 Instrumentalities.

97.     Any party, including Defendant's partners, clients, customers/subscribers, and end users, using the Blu Accused '566 Instrumentalities necessarily infringes the '566 Patent because the inventions of the '566 Patent are required to comply with the relevant cellular standard. Defendant advertises its Blu Accused '566 Instrumentalities as compliant with the relevant cellular standard, which induces others to infringe the '566 Patent.

98.     Defendant has knowingly induced infringement since at least March 6, 2018, when Defendant was first made aware of the '566 Patent during extensive correspondence with Plaintiff as discussed in Paragraphs 31-32 above.

99.     Upon information and belief, the Defendant is liable as a contributory infringer of the '566 Patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States the Blu Accused '566 Instrumentalities that infringe the patented methods and apparatuses, to be especially made or adapted for use in an infringement of the '566 Patent. Each of the Blu Accused '566 Instrumentalities is a material component for use in practicing the '566 Patent and

is specifically made and not a staple article of commerce suitable for substantial non-infringing use.  In particular, each of these Accused Instrumentalities is advertised to be compliant with the relevant standard and primarily used in compliance with that standard.

100.    Pantech has been harmed by Defendant's infringing activities.

## COUNT V – INFRINGEMENT OF U.S. PATENT NO. 9,854,545

101.    The allegations set forth in the foregoing paragraphs 1 through 35 are incorporated into this claim for relief.

102.    On December 26, 2017, the '545 Patent, entitled "Apparatus and Method for Establishing Uplink Synchronization in a Wireless Communication System" was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application No. 14/733,068, filed on June 8, 2015. The '545 Patent claims priority to U.S. Patent App. No. 13/578,531, filed as PCT/KR2011/000909, filed on February 10, 2011, now U.S. Patent No. 9,054,835, KR 10-2010-0012564, filed on February 10, 2010, KR 10-2010-0027230, filed on March 26, 2010, and KR 10-2011-0008683, filed on January 28, 2011. A true and correct copy of the '545 Patent is attached as Exhibit 5.

103.    Pantech is the assignee and owner of all right, title and interest in and to the '545 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

104.    The '545 Patent discloses methods, including carrier aggregation methods, for establishing uplink synchronization in a wireless communication system with respect to at least one Component Carrier ("CC"), through the use of timing groups. For instance, a user equipment configures one or more uplink timing groups based on information received through Radio Resource Control (RRC) signaling, transmits a Random Access Preamble (RAP) through one or

more CCs in a respective timing group, and receives in response a timing advance value to apply to uplink CCs in the timing group. For example, Claim 2 of the '545 Patent recites elements of the carrier aggregation functionality mandated by at least the LTE Advanced standard, including at least the following 3GPP technical specifications: TS 36.300, TS 36.321, TS 36.213, TS 36.211, and TS 36.331, Release 10 and higher. Compliance with these technical specifications, and thus with at least the LTE Advanced standard, requires the use of the invention recited in at least claim 2 of the '545 Patent, including the functionality described in this paragraph.

105.    Upon information and belief, Defendant has and continues to directly infringe at least claim 2 of the '545 Patent by making, using, selling, importing, offering to sell within the United States, importing into the United States, and providing to and within the United States, Accused Instrumentalities that practice at least claim 2 of the '545 Patent (the "Blu Accused '545 Instrumentalities"). Defendant also has and continues to directly infringe at least claim 2 by practicing claim 2 through the Blu Accused '545 Instrumentalities, and by causing the Blu Accused '545 Instrumentalities to practice the patented inventions.

106.    Blu Accused '545 Instrumentalities include the G Series phones (*e.g.*, G5, G5-Plus, G50, G50-Plus, G50-Mega, G6, G60, G8 G70, G80, G9, G9-Pro, G90, G90-Pro), VIVO Series phones (*e.g.*, VIVO X5, VIVO XL5, VIVO XI, VIVO XI+), and other LTE-compatible devices that support LTE carrier aggregation. On information and belief, each of the Blu Accused '545 Instrumentalities incorporates at least one processor configured to comply with LTE Advanced, including supporting LTE carrier aggregation, and thus including at least the following 3GPP technical specifications: TS 36.300, TS 36.321, TS 36.213, TS 36.211, and TS 36.331, Release 10 and higher.

739706925

107.    Exemplary Blu Accused '545 Instrumentalities each incorporate a MediaTek Helio chipset, application processor, SoC, or system-on-chip (*e.g.*, MediaTek Helio P22, P23, P29, A25, G90T, P60). Information and documents from MediaTek website indicate that each of the incorporated MediaTek Helio chipsets supports LTE carrier aggregation. On information and belief, each incorporated MediaTek Helio chipset, application processor, SoC, or system-on-chip complies with LTE Advanced, including at least the following 3GPP technical specifications: TS 36.300, TS 36.321, TS 36.213, TS 36.211, and TS 36.331, Release 10 and higher.

108.    Defendant was made aware of the '545 Patent and its infringement thereof by correspondence from Pantech during September 25, 2020, as discussed in Paragraph 32 above.

109.    Defendant was further made aware of the '545 Patent and its infringement thereof at least as early as the date of filing of this Complaint.

110.    Since September 25, 2020, when it was first made aware of the '545 Patent, Defendant's infringement has been, and continues to be, willful.

111.    Upon information and belief, these Blu Accused '545 Instrumentalities are used, marketed, provided to, and/or used by or for Defendant's partners, clients, customers/subscribers and end users across the country and in this district.

112.    Upon information and belief, Defendant has induced and continues to induce others to infringe at least claim 2 of the '545 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendant's partners, clients, customers/subscribers, and end users, whose use of the Blu Accused '545 Instrumentalities constitutes direct infringement of at least claim 2 of the '545 Patent.

739706925

113.    In particular, Defendant's actions that aid and abet others such as its partners, customers/subscribers, clients, and end users to infringe include advertising and distributing the Blu Accused '545 Instrumentalities and providing instruction materials, training, and services regarding the Blu Accused '545 Instrumentalities.

114.    Any party, including Defendant's partners, clients, customers/subscribers, and end users, using the Blu Accused '545 Instrumentalities necessarily infringes the '545 Patent because the inventions of the '545 Patent are required to comply with the relevant cellular standard. Defendant advertises its Blu Accused '545 Instrumentalities as compliant with the relevant cellular standard, which induces others to infringe the '545 Patent. Defendant has knowingly induced infringement since at least September 25, 2020, when Defendant was made aware of the '545 Patent during extensive correspondence with Plaintiff as discussed in Paragraph 32 above.

115.    Upon information and belief, Defendant is liable as a contributory infringer of the '545 Patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States the Blu Accused '545 Instrumentalities that infringe the patented inventions, to be especially made or adapted for use in an infringement of the '545 Patent. Each of the Blu Accused '545 Instrumentalities is a material component for use in practicing the '545 Patent and is specifically made and not a staple article of commerce suitable for substantial non-infringing use.  In particular, each of the Blu Accused '545 Instrumentalities is advertised to be compliant with the relevant standard and primarily used in compliance with that standard.

116.    Pantech has been harmed by Defendant's infringing activities.

### COUNT VI – INFRINGEMENT OF U.S. PATENT NO. 6,809,641

117.    The allegations set forth in the foregoing paragraphs 1 through 35 are incorporated into this claim for relief.

27

118.    On Oct. 26, 2004, U.S. Patent No. 6,809,641, "Method For Disabling Alarm Temporarily In Mobile Communication Terminal" was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application No. 10/194,038, filed on July 11, 2002. The '641 Patent claims foreign priority to KR 10-2001-41909, filed on July 12, 2001. A true and correct copy of the '641 Patent is attached as Exhibit 6.

119.    Pantech is the assignee and owner of all right, title and interest in and to the '641 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

120.    The '641 Patent discloses a method for disabling temporarily a preset alarm in a mobile communication terminal for one day, periodically, or on a designated date.

121.    Upon information and belief, Defendant has and continues to directly infringe at least claim 1 of the '641 Patent by making, using, selling, importing, offering to sell within the United States, importing into the United States, and providing to and within the United States, Accused Instrumentalities that practice at least claim 1 of the '641 Patent (the "Blu Accused '641 Instrumentalities"). Defendant also has and continues to directly infringe at least claim 1 by practicing claim 1 through the Blu Accused '641 Instrumentalities, and by causing the Blu Accused '641 Instrumentalities to practice the patented inventions.

122.    For example, temporarily disabling a preset alarm in each of the Blu '641 Accused Instrumentalities includes a first step of determining whether a temporal disabling menu button (e.g., button annotated in red block below) has been pushed by a user while the Blu '641 Accused Instrumentality (e.g., Blu G9 and Blu Vivo XI+) is in receive wait mode; a second step of displaying temporal disabling menu items (e.g., days of the week such as Monday, Tuesday, etc. on the next screen) upon push of said temporal disabling menu button by said user; and a third step

28

of temporarily disabling alarms of the date designated by the corresponding menu item upon selection of a temporal disabling menu item by said user.



Blu G9 User Manual (https://bluproducts.com/manuals/g9/g9-en.pdf) at p. 82 (annotations added).

123.    Defendant was made aware of the '641 Patent and its infringement thereof by correspondence from Pantech's predecessor-in-interest, Goldpeak, on March 6, 2018 as discussed in Paragraphs 31-32 above.

124.    Defendant was further made aware of the '641 Patent and its infringement thereof at least as early as the date of filing of this Complaint.

125.    Since March 6, 2018, when it was first made aware of the '641 Patent, Defendant's infringement has been, and continues to be, willful.

739706925

126.    Upon information and belief, these Blu '641 Accused Instrumentalities are used, marketed, provided to, and/or used by or for Defendant's partners, clients, customers/subscribers, and end users across the country and in this district.

127.    Upon information and belief, Defendant has induced and continues to induce others to infringe at least claim 1 of the '641 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendant's partners, clients, customers/subscribers, and end users, whose use of the Blu '641 Accused Instrumentalities constitutes direct infringement of at least claim 1 of the '641 Patent.

128.    In particular, Defendant's actions that aid and abet others such as its partners, customers/subscribers, clients, and end users to infringe include advertising and distributing the Blu '641 Accused Instrumentalities and providing instruction materials, training, and services regarding the Blu '641 Accused Instrumentalities.

129.    Any party, including Defendant's partners, clients, customers/subscribers, and end users, using the preset alarm disabling function of the Blu '641 Accused Instrumentalities infringes the '641 Patent. Defendant has knowingly induced infringement since at least March 6, 2018, when Defendant was first made aware of the '641 Patent during extensive correspondence with Plaintiff as discussed in Paragraphs 31-32 above.

130.    Upon information and belief, Defendant is liable as a contributory infringer of the '641 Patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States the Accused Instrumentalities that infringe the patented inventions, to be especially made or adapted for use in an infringement of the '641 Patent. Each of the Blu '641 Accused

Instrumentalities is a material component for use in practicing the '641 Patent and is specifically made and not a staple article of commerce suitable for substantial non-infringing use.

131.   Pantech has been harmed by Defendant's infringing activities.

## DAMAGES

As a result of Defendant's acts of infringement, Pantech has suffered actual and consequential damages. To the fullest extent permitted by law, Pantech seeks recovery of damages at least in the form of reasonable royalties.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Pantech demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment for itself and against Defendant as follows:

A.   An adjudication that Defendant has infringed U.S. Patent Nos. 8,538,411, 8,787,216, 8,873,519, 9,237,566, 9,854,545 and 6,809,641;

B.   An award of damages to be paid by Defendant adequate to compensate Plaintiff for Defendant's past infringement of the Asserted Patents, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C.   A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Plaintiff's reasonable attorneys' fees; and

D.   An award to Plaintiff of such further relief at law or in equity as the Court deems just and proper.

739706925

Dated: January 26, 2021

*Of counsel:*

James A. Fussell, III*
Jamie B. Beaber*
Baldine Paul*
Sen (Alex) Wang*
Clark S. Bakewell*
MAYER BROWN LLP
1999 K Street, N.W.
Washington D.C. 20006
(202) 263-3000
jbeaber@mayerbrown.com
jfussell@mayerbrown.com
bpaul@mayerbrown.com
awang@mayerbrown.com
cbakewell@mayerbrown.com

Cliff A. Maier*
Graham M. Buccigross*
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306
(650) 331-2000
cmaier@mayerbrown.com
gbuccigross@mayerbrown.com

Gregory J. Apgar*
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500
gapgar@mayerbrown.com

(* *pro hac vice* application to be filed)

Respectfully submitted,

/s/ *Marcos D. Jiménez*
Marcos Daniel Jiménez
Florida Bar No. 441503
mdj@mdjlegal.com
Marcos D. Jimenez, P.A.
255 Alhambra Circle, Suite 800
Coral Gables, FL 33134
Tel: 305-570-3249
Fax: 305-437-8158

*Counsel for Plaintiff Pantech Corporation*

739706925